The First National Bank of Monmouth

*v.*

John C. Dunbar.

*Filed at Ottawa November 13, 1886.*

118  625
28a  334
28a  337
118  625
35a  224
118  625
138  356
118  625
145  271
118  625
156  410
118  625
86a   62

1. BANKS AND BANKING—*special deposit in national bank—right and duty in respect to it.* A national bank, even after its failure, and after its property has passed into the hands of the Federal authorities, has the right, and it is its duty, under section 5228 of the Revised Statutes of the United States, to deliver special deposits to those to whom they belong.

2. SAME—*special deposit of bonds—whether demand necessary, in order to maintain trover.* In case of bonds deposited with a national bank, which afterwards fails, a demand for their delivery, and refusal, before possession is taken of them by the Federal authorities, is necessary in order to maintain an action for their conversion; but if the bonds have been wrongfully transferred by the bank or its cashier, and put with the funds of the bank, and reported and treated by the bank as a part of its assets, this being a conversion, no demand and refusal will be necessary in order to maintain trover.

3. WITNESS—*competency—as against one suing as administrator—in respect to matters transpiring after an agency has ceased.* In an action by an administrator against a bank, for the conversion of municipal bonds specially deposited, the bank directors, being parties in interest, are incompetent to testify, generally, as witnesses, in behalf of the bank; and the fact that the cashier of the bank may have bought the bonds for the intestate, as his agent, and testified in the case, will not authorize the directors to testify to matters happening after the termination of such agency.

4. AGENCY—*when it ceases—notice to agent as notice to principal.* Where a bank customer employs the cashier of the bank to purchase bonds for him, and after the purchase places them on special deposit with the bank, the cashier, after such purchase and deposit, ceases to be agent for the owner of the bonds; and if he afterwards transfers the bonds to the bank, to conceal his own embezzlement of funds, he will be acting as the agent for the bank, and notice to him of the ownership of the bonds will be notice to the bank.

5. PRACTICE—*general objection to leading question.* A general objection to a question to a witness will not reach the objection of its being leading, and a trial court has a large discretion as to the form of questions to be propounded to the witnesses.

6. INSTRUCTION—*when good as to particular count.* Where an instruction is expressly limited to a particular count in the declaration, it will not be erroneous if substantially good as to that count.

40—118 ILL.

7. Error will not always reverse—*as to admission of evidence.* Where a plaintiff recovers alone on one of several counts in his declaration, errors in the admission of evidence relating solely to the other counts, will not be considered, as they could have worked no prejudice.

8. Same—*in the matter of instructions.* Although an instruction may be too broad in laying down a proposition of law, yet when the facts are such as to bring about the same result, the error in the instruction will not call for a reversal, as it could not mislead the jury.

Writ of Error to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Warren county; the Hon. Arthur A. Smith, Judge, presiding.

Messrs. Grier & Dryden, and Messrs. Kirkpatrick & Alexander, for the plaintiff in error:

No demand was made for the bonds until after the bank examiner had taken possession,—when it was beyond the power of the bank to do anything. We submit, that if, while the bank was still doing business and had control of the property, it might, on demand and refusal, have been liable in trover for a conversion, it could not have been so liable after possession had been taken by the authorities of the United States. The bank is not responsible either for the acts of the officers of the United States, or of Hubbard, beyond his authority as cashier.

Conversion is a positive, tortious act. Mere non-feasance or neglect of some legal duty will not suffice to support trover. *Sturges* v. *Keith,* 57 Ill. 451.

Again, the evidence of Hartly, the town clerk, shows that the bonds in question were made payable to bearer. Trover would not lie, unless it be shown that at the time action was brought, plaintiff was the owner of the legal title to the property. 2 Parsons on Notes and Bills, 435; *Collins* v. *Martin,* 1 Bos. & P. 648; *Garvin* v. *Wiswell,* 83 Ill. 215; 1 Chitty's Pleading, 148.

It was error to allow leading questions to be put to Hubbard, as his bias and feelings were all with the plaintiff below.

Hubbard having acted as the agent of Byers, and testified to the matters, the directors were competent to testify about the same transaction.

· The bank, occupying the position of gratuitous bailee, was not bound, absolutely, to keep the bonds safely.   *Manhattan Co.* v. *Lydig,* 4 Johns. 377; *Smith* v. *Bank of Westfield,* 99 Ill. 611; *Hindman* v. *Borders,* 89 id. 336; *Sturges* v. *Keith,* 57 id. 451.

Messrs. MATHEWS & PEACOCK, and Messrs. McKENZIE & CALKINS, for the defendant in error:

If the cashier of the bank put the bonds of Byers in the bank safe and with the bank funds, and reported them as assets of the bank, this was such an assumption of ownership by the bank as of itself amounted to a conversion, and no proof of a demand and refusal became necessary.   Chitty's Pleading, 155; *Marsh* v. *Thompson,* 78 Ill. 62; *Hamilton* v. *Hunt,* 14 id. 472.

This was a special deposit.   If the package was sealed, it was a breach of trust on the part of the bank for any officer of the bank to open it.   Would the act of the cashier in taking the bonds from the package and mingling them with the funds of the bank, without the consent of Byers, change their character from that of a special deposit?   And if a special deposit, did the failure of the bank, and its passing into the hands of the United States authorities, change them to funds of the bank?   We think not.   And upon the failure of the bank, when the bank passed into the hands of the comptroller, one of the only two classes of business it could transact, under the law, was to deliver special deposits; and it had the right, and it was its duty, to deliver this special deposit on demand.   U. S. Stat. 1878, sec. 5228.

If the four bonds placed on deposit by Byers were stolen by Hubbard, and by him transferred to the bank, the bank could not, in any sense, be an innocent purchaser, since, being

the agent of the bank in making all purchases, Hubbard had notice that the property was stolen, and notice to the agent is notice to the principal. *Bryan* v. *Primm*, Breese, 59; *Rector* v. *Rector*, 3 Gilm. 119; *Singer Manf. Co.* v. *Holdfodt*, 86 Ill. 460; *Insurance Co.* v. *Wells*, 89 id. 82; *Insurance Co.* v. *Chipp*, 93 id. 96; *Parmly* v. *Buckley*, 103 id. 115.

The allowance of leading questions is a matter of discretion with the court, and can not be assigned for error. Greenleaf on Evidence, sec. 435; *Greenup* v. *Stokes*, 3 Gilm. 210; *Parmlee* v. *Austin*, 20 Ill. 36.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We have had some difficulty in ascertaining the precise questions intended to be presented upon this record, to this court, since there has been no oral argument of the case, and counsel have simply re-filed, here, their printed arguments used in the Appellate Court, in which questions of law and fact are, to some extent, intermingled. We have, however, carefully gone over the entire record, and considered all of the questions, except those of fact, discussed in the Appellate Court, and we are unable to perceive any reason justifying a reversal of the judgment of that court.

The declaration contains three counts — two in case, for negligence, and the third for trover and conversion.

The facts which the evidence tends to establish, and which the judgment of the Appellate Court requires us to assume are established, are, briefly, that on the 17th day of March, 1882, Solomon Byers employed B. T. O. Hubbard, defendant's cashier, to purchase for him four Roseville township railroad aid bonds, of $1000 each; Hubbard purchased the bonds, and paid for them from the proceeds of a check drawn by Byers on the defendant; that on the same day, Byers made a special deposit of these bonds with the defendant; that Hubbard, having embezzled funds from the defendant while

acting as cashier, subsequently, and while still acting as defendant's cashier, without the knowledge or consent of Byers, in order to conceal, in part, the fact or extent of his embezzlement, took these bonds from their place of special deposit in the bank, and put them with the assets, including other like bonds, of the defendant, and thereafter reported them to the defendant as so much of its assets; that the defendant afterwards became insolvent, and its assets, and also these bonds, were taken charge of by a bank examiner, on the 8th of April, 1884, and that the defendant has, since, been demanded, by Byers, to deliver the bonds to. him, and has refused.

The Appellate Court, in its opinion filed on affirming the judgment of the circuit court, held—

*First*—That the circuit court did not err in holding that the evidence sustained the verdict.

*Second*—That the circuit court did not err in holding that in order to sustain the action, a demand should have been made for the delivery of the bonds before the bank examiner took possession of them; that if the special deposit was wrongfully transferred by the bank or its cashier, and put with the funds of the bank, and reported and treated by the bank as a part of its assets, then this was a conversion, and no demand and refusal were necessary to sustain trover, but that if the bonds should be regarded as still a special deposit, notwithstanding such transfer, yet the bank, although it had failed, and its property was in the hands of the Federal authorities, had the right, and it was its duty, under section 5228 of the Revised Statutes of the United States, "to deliver special deposits."

*Third*—The court did not err in overruling the objections to the questions put by plaintiff to the witness B. T. O. Hubbard, on his direct examination; that the objections were general, and it does not appear that they were placed upon the ground that the questions were leading, and, in any view,

that the trial court, in the examination of witnesses, has a large discretion as to the form of the questions to be put, which, in this instance, does not appear to have been abused.

*Fourth*—Objections to questions propounded to Guy Stapp were properly sustained, because the answers called for were with reference to matters that were *res inter alios acta,* and would have been but secondary evidence.

*Fifth*—The directors of the bank were all stockholders in the bank, and therefore parties in interest in the suit. The plaintiff, on the trial, was suing as administrator. Although Hubbard, in *purchasing* the bonds, was agent for Byers, yet when they were deposited in the bank, and when he took them from the special deposit and placed them with the assets of the bank, he was acting as the cashier, and, therefore, the agent of the bank. It was not proposed to prove, by the directors, any transaction or conversation with Hubbard while acting as the agent of Byers in making the purchase, or any transaction or conversation between Hubbard and Byers, even, and hence the proposed testimony of the directors was not admissible, under the second exception of section 2 of the statute in relation to "Evidence and Depositions," and it was properly excluded.

*Sixth*—The questions put to Stapp and Young on cross-examination, to which objection is urged, related entirely to the issues under the first and second counts of the declaration; and since the jury found for the plaintiff only on the third count, it is impossible that the defendant can have been prejudiced by those questions.

*Seventh*—The first instruction given at the instance of the plaintiff, was limited to the count in trover,—the third count; and, as applied to that count, it was substantially correct.

*Eighth*—Conceding that the third and fourth instructions of the plaintiff were too broad in stating that the legal owner of personal property is never divested of title by the wrongful act of any other person, yet, inasmuch as these bonds are

payable to bearer and negotiable by delivery, and since, here, Hubbard was the cashier of the bank from the date of the purchase of the bonds to the day the bank was closed, notice to him was notice to the bank, that the bonds were held on special deposit, and it could not by any purchase, having such notice, obtain a title to the bonds, and the instructions could not, therefore, have misled the jury to the defendant's prejudice.

*Ninth*—The plaintiff's fifth instruction was not objectionable. It merely left the jury to pass upon the credibility of the witnesses.

*Tenth*—The salient points to establish the case for the plaintiff were, that a special deposit was made as claimed, and that, without the knowledge or consent of the depositor, the deposit was transferred to the general funds of the bank, and converted to its use. Those points were fully and explicitly covered by the instructions given, and must have been affirmatively found by the jury, and hence it is immaterial that, as to some matters of detail, the instructions were not technically correct. Those that were given at the instance of the defendant, presented the law of the case fully and fairly in its behalf.

These rulings, as we understand the record, cover every point made,—or, at least, substantially so. We believe each of them, so far as depending on the facts, to be sustained by the record, and, so far as enunciating a rule of law, to be sustained by authority. Indeed, as legal rulings, we do not conceive there can be any question in regard to their accuracy. The only difficulty in the case is of fact,—namely, did Hubbard ever purchase any bonds with Byers' money, and if so, are those bonds among the bonds in the possession of the bank when the examiner took possession, and afterwards, when the demand was made for their possession, by Byers. These questions being found in the affirmative,—and there was evidence tending to sustain that finding,—the liability

of the bank must inevitably follow.    Although, in the mere act of purchasing the bonds, Hubbard was the agent of Byers, when the purchase was complete that agency ended.    As cashier, in receiving the bonds on special deposit, he was the agent of the bank; and it was as cashier and agent of the bank, that, to hide, in part, his embezzlement from the bank, he took the bonds from the special deposit and placed them among and reported them as assets of the bank.    His knowledge was its knowledge, and it could not, in this way, acquire a legal title to the bonds without the knowledge or consent of Byers.

The judgment is affirmed.

*Judgment affirmed.*