## BAKER v. CURETON.

No. 6350.  Opinion Filed July 27, 1915.

(150 Pac. 1090.)

1.  **GUARDIAN AND WARD—Appointment—Collateral Attack—Record—Presumption.** In a cross-action to quiet title, where it is shown on the face of the record of the county court, introduced in evidence in support of a guardian's deed relied on to vest title in defendant, that, inasmuch as the minor appeared in open court and testified that he was 18 years old, and that his father and mother were dead, no notice was given by the judge to any one before making the appointment of a guardian nominated by the minor, assuming that such notice was required to be given by Rev. Laws 1910, section 6522, as a condition precedent to vest the county court with jurisdiction to make the appointment, **held,** the county court being a court of general jurisdiction as to probate matters, we will presume from the fact of the appointment that the court heard further evidence, and at that time found the fact to be that the minor was in the care of no one and had no relatives residing in the county, and hence there was no one to whom the judge could give the notice prescribed by said section, and that said appointment was good. And **held,** further, that the record of the county court cannot be collaterally attacked by evidence **aliunde** that the minor was at the time in the care of some one and had relatives residing in the county.

Baker v. Cureton.

2.  **SAME—Jurisdiction of Lower Court.** Where a minor above the age of 14 years nominates his own guardian, it is the duty of the county court to satisfy itself of every fact necessary to vest the court with jurisdiction to make the appointment, and if the court makes the appointment, the presumption is that he heard the evidence and found every fact to justify the appointment, and unless the contrary appears on the face of the record, the proceedings of the court cannot be collaterally attacked on that ground.

3.  **GUARDIAN AND WARD—Special Guardian—Sale by Order of Court.** As by Rev. Laws 1910, section 3333, a special guardian has power over the property of his ward "unless otherwise ordered," it seems that such guardian has power to sell the land of his ward pursuant to an order of the county court.

4.  **COURTS—County Court—Procedure—Appeal—Affidavit.** Where from an order of sale a notice of appeal and bond are filed, but no affidavit as required by Rev. Laws 1910, section 6503, **held,** that such affidavit filed by an applicant for appeal from the decision of the county court ordering a guardian's sale of land is a prerequisite to the granting of an appeal and essential, not only to the jurisdiction of the court allowing it, but to confer jurisdiction thereof on the district court.

(Syllabus by the Court)

*Error from District Court, Wagoner County;*

*R. P. De Graffenried, Judge.*

Action by Earl Baker against Otis R. Cureton, with cross-petition by defendant. Judgment for defendant, and plaintiff brings error. Affirmed.

*B. B. Blakeney* and *J. H. Maxey, Jr.,* for plaintiff in error.

*John B. Campbell* and *Wm. O. Beall,* for defendant in error.

TURNER, J.   On February 27, 1913, Earl Baker, plaintiff in error, in the district court of Wagoner county sued Otis R. Cureton, defendant in error, to clear his title to the northwest quarter of the northwest quarter of section 36, township 18, range 15 east, in Wagoner county, alleging himself to be in possession and the owner thereof

in fee. For answer defendant made general denial, and by way of cross-petition alleged that he was the owner in fee and in possession of the land, set up the various deeds of record under which he claimed, and prayed that his title thereto be cleared. There was trial to the court and judgment for defendant as prayed, and plaintiff brings the case here.

Both sides allege the land to have been the homestead allotment of one Doctor Ballard, a Cherokee freedman, and concede that he reached his majority September 1, 1911. Plaintiff deraigned his title by warranty deed from Ballard purporting to convey the land to W. E. McIntosh, made, executed, and delivered September 1, 1911, a deed from McIntosh made, executed, and delivered the same day, purporting to convey the land to Ollie M. Baker, and a deed from the latter made, executed, and delivered, purporting to convey the land to plaintiff, dated January 16, 1913.

Defendant based his title upon a guardian's deed made, executed, and delivered to him August 30, 1911, by Joseph C. Casaver, as guardian of the estate of said Ballard, pursuant to proceedings in the county court of Wagoner county. Whether defendant should have of right prevailed, as he did, turns upon the validity of said deed. It is assigned by plaintiff that said deed is void because, he says, the records of the county court introduced in evidence in support thereof show on their face that no valid appointment of a guardian for Ballard was ever made. Of course, if the records of that court disclose that the court had no jurisdiction to make the appointment complained of, the order of appointment is void on its face, and the subsequent sale and guardian's deed passed no title to the land. On this point the record discloses that

on October 7, 1908, at which time Ballard was a minor over the age of 14 years, there was filed in the county court of Wagoner county the following:

"Now comes Doctor Ballard and shows to the court that he is a minor of the age of 18 years, that his father and mother are deceased, and that he desires that William Hawkins be appointed his legal guardian in order that his estate may be legally administered and his interest therein properly protected, and he therefore nominates the said William Hawkins as his legal guardian, and prays his appointment by this honorable court.

"DOCTOR BALLARD.

"STATE OF OKLAHOMA, WAGONER COUNTY—SS.:

"Doctor Ballard, being first duly sworn, deposes and says that he is the person who signed the above and foregoing petition, and that he understands the contents thereof, and that the statements therein contained and set forth are true, to the best of his knowledge and belief.

"DOCTOR BALLARD.

"Subscribed in my presence and sworn to before me this 7th day of October, 1908.

"W. T. DRAKE, *County Judge.*"

And thereafter this order:

"Now on this 7th day of October, 1908, William Hawkins having filed in this court his petition showing that it is necessary that a guardian should be appointed for the person and estate of Doctor Ballard. a minor, and praying that letters of guardianship issue to William Hawkins: It is ordered that said petition be, and hereby is, set for hearing on the forthwith day of October, 1908, at —— o'clock —— m., and that notice thereof be given by the minor appearing in open court and testifying that he is 18 years of age, and requesting the appointment of William Hawkins as his guardian. It is considered by the court that notice of the hearing need not be served upon any person, inasmuch as the said minor further testified that his father and mother are deceased.

"W. T. DRAKE, *County Judge.*"

Pursuant to which letters of guardianship thereafter duly issued to said Hawkins, which, plaintiff says, because it thus appears upon the face of the record that they were issued without notice, said appointment was void for want of jurisdiction in the court to make it. In support of his contention that such notice was necessary to vest the court with jurisdiction to make the appointment, he relies on Rev. Laws 1910, sec. 6522. It reads:

"The county court of each county when it appears necessary or convenient, may appoint guardians for the persons and estates, or either, or both of them, of minors who have no guardian legally appointed by will, or deed, and who are inhabitants or residents of the county, or who reside without the state and have estates within the county. Such appointment may be made on the petition of a relative or other person in behalf of such minor. Before making the appointment the judge must cause such notice as he deems reasonable to be given to the relatives of the minor residing in the county, and to any person having care of such minor."

It seems, as this appointment was made on the petition of Hawkins, that the point is well taken, and that the notice contended for was required by the statute. But let that be as it may, assuming that it was necessary to its validity that the judge gave notice of the appointment of Hawkins "to any person having the care of Ballard" and "to such relatives of the minor residing in the county as the judge may deem proper," while it might be said from the face of the record that no such notice was given, can we not indulge the presumption from the fact of the appointment that the court heard evidence and found every fact necessary to justify the appointment? In other words, the county court of Wagoner county being a court of general jurisdiction as to probate matters *(Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433), and its records

entitled to have accorded them the effect and legal presumption in favor of the validity of the appointment, it not appearing on the face of the record that Ballard had relatives residing in the county or was in the care of any one, can we not presume that, his father and mother being dead, he was in the care of no one and had no relatives living in the county, and that hence there was no one to whom the judge could give the notice prescribed by said section? We can and will; and hold that the record and proceedings of the county court cannot be collaterally attacked, as is here attempted, by evidence *aliunde,* in effect, that he was at the time in the care of some one, and had relatives residing in the county upon whom the notice should have been served.

At the time of the rendition of the opinion in *Cox v. Boyce,* 152 Mo. 582, 54 S. W. 468, 75 Am. St. Rep. 483, the probate courts of Missouri were, as here, courts of general jurisdiction. In that case the court said:

" * * * When application for the appointment of a curator is made, the probate court is to satisfy itself if the minor is a resident of the county, and if the court makes the appointment the presumption is that it heard the evidence and found the fact to justify its appointment. Unless it appears on the face of the record that the minor was not a resident of the county, the proceedings of the probate court cannot be attacked collaterally on that ground."

In *Bush v. Lindsey,* 24 Ga. 245, 71 Am. Dec. 117, the court said:

"Was the court right in receiving as evidence the exemplification from the Court of Ordinary of Talbot county showing the appointment of Pate as guardian of Hays and an order authorizing him to sell the land? The objection to the exemplification was that it did not show upon its face that the ward lived in Talbot county, or had

property therein, at the time of the appointment or of the order, and, consequently, that it did not show upon its face anything to give jurisdiction to that court to make the appointment and pass the order. It is sufficient if the court had jurisdiction; it is not necessary that what gave it jurisdiction should appear on the face of its proceedings. The Court of Ordinary is, and has always been, a court of general jurisdiction. Mrs. Pate says that she 'lived in Jones county when the draw was given in for, the ward, her child, then being only three months old.' In this it is implied that she has since ceased to live there, and has come to live elsewhere. There is nothing to show that this other place was not Talbot county. It does not appear that Pate, her husband, the person appointed guardian, ever lived in Jones; it does not appear where he at any time lived. It may well be, therefore, that Mrs. Pate and the child were all living in Talbot county at the time when his appointment of guardian was made, and at the time when the order of sale was passed. But, the court being a court of general jurisdiction, it is necessary to presume, in the absence of proof to the contrary, that at these times the ward did reside in Talbot county, or did have property in that county; in short, to presume that something existed which gave the court jurisdiction. The court, then, was right in receiving the exemplification."

In *Monastes v. Catlin*, 6 Or. 119, the county court of Columbia county was a court of general jurisdiction. Referring to the court, the opinion says:

" * * * If it was a court of general jurisdiction, its jurisdiction is presumed, and its record 'imports absolute verity, and cannot therefore be collaterally impeached from without' *(Hahn v. Kelly*, 24 Cal. 402), and 'when the record is silent as to what was done, it will be presumed that what ought to have been done was not only done, but rightly done.' "

*In re Eikerenkotter's Estate*, 126 Cal. 54, 58 Pac. 370, was an appeal from an order of the superior court refusing to set aside letters of guardianship theretofore issued

to Julius Eikerenkotter over the person of Catherine H. Eikerenkotter, a minor. The motion to set aside the order was filed more than six months after the order of appointment was made, and for that reason could be assailed only for want of jurisdiction in the court to make the appointment apparent on the face of the record. The motion was based on the fact that the movant or petitioner, Ioan Smith, had the custody of the minor at the time the order of appointment was made, and no notice of the hearing was given her. There was nothing in the record to disprove the fact of service of notice upon Ioan Smith. Indulging presumptions in favor of the validity of the appointment, the court said:

" * * * Lack of jurisdiction must be affirmatively shown by the record. Perchance, some of the consenting relatives to the appointment of Eikerenkotter may have had the custody of the minor at the time. Perchance, Eikerenkotter himself had the custody of the minor upon the day of hearing. Again, as far as the record discloses, the fact may have been that the custody of the minor was in no one at the time the application for appointment was made, and consequently there could be no service of the notice contemplated by the statute. * * * "

And for the reason stated, and the further reason that petitioner was bound to rest her case on the facts affirmatively disclosed by the record, the order appealed from was affirmed.

And so we say that, as Ballard may not have been in the care of any one, or, perchance, Hawkins had the care of this minor at the time he came into court with him and was nominated as his guardian, and as, perchance, Ballard at the time had no relatives residing in the county upon whom the notice could have been served, the court did right to refuse to set aside the order of

appointment as void on its face and to hold the guardian's deed good to pass the title of the minor to the land in question; that is, unless as is contended, the record on its face discloses that Casaver, the alleged successor in office of Hawkins, was without power as such guardian to sell the land and pass title by guardian's deed. On this point the record discloses that after Hawkins had duly qualified and entered upon the discharge of the duties as guardian pursuant to his appointment, that is, on January 3, 1911, he filed his final report as guardian aforesaid in the county court of Wagoner county, which was duly approved, tendered his resignation as guardian, which was accepted, and recommended that J. C. Casaver be appointed his successor in office; that on the next day came Ballard into court and nominated said Casaver as his guardian to succeed said Hawkins, whereupon the court approved the nomination and appointed said Casaver as guardian of the estate of said minor "upon the condition of his giving bond to said minor in the sum of $1,000 and taking the oath required by law." On February 3, 1911, came Casaver, and, having accepted said appointment and given bond as required, duly petitioned the court for an order to sell the land in question, and thereafter prosecuted the proceeding to a point where the court ordered the sale, and the same was thereafter sold to Otis R. Cureton, defendant in error, and the sale duly confirmed, and Casaver, as guardian of said Ballard, directed by the court to execute to him, as guardian, proper and legal conveyances to the land, which was done. But before hearing the return of the sale, it appearing to the court on April 12, 1911, by petition of Casaver, that he had proceeded thus far without filing his oath of office and without letters of guardianship issued to him, it was on that day ordered by the court that said letters issue to him

as of the date of his appointment upon his taking the oath of office, "and that his acts and doings heretofore done and performed in this matter are hereby approved and confirmed."

It is contended that the subsequent sale by him of the land in question was void because the letters issued pursuant to said order read:

"J. C. Casaver is hereby appointed special guardian of the estate of Doctor Ballard, a minor, as per order of court this day made and entered."

This for the reason, it is urged, the statute fails to provide for a special guardian. Not so. Rev. Laws 1910, sec. 3325. As by Rev. Laws 1910, sec. 3333, it would seem that a special guardian has power over the property of the ward "unless otherwise ordered," there is no merit in the contention that this guardian had no power to make the sale complained of.

Neither is there merit in the contention that the appeal of Maggie Baker from the order of sale is pending, and hence the court had no jurisdiction to order the sale. Her appeal is not pending, for the reason that, although from said order of sale she filed notice of appeal and bond, she failed to file with her notice of appeal the affidavit required by Rev. Laws 1910, sec. 6503, setting forth the facts which entitled her to appeal. Said section reads:

"A person interested in the estate or funds affected by the decree or order, who was not a party to the special proceeding in which it was made, but who was entitled by law to be heard therein, upon his application, * * * may also appeal as prescribed in this article. The facts which entitle such person to appeal must be shown by an affidavit which must be filed with the notice of appeal."

Such affidavit so filed by an applicant for an appeal from the decision of the probate court ordering the sale

is a prerequisite to the granting of an appeal, and essential not only to the jurisdiction of the court allowing it, but to confer jurisdiction thereof on the district court. *Spangler, Adm'r, etc., v. Robinson,* 20 Kan. 682; *McClun, Guardian, v. Glasgow, Judge, etc.,* 55 Kan. 182, 40 Pac. 329; *Hazeltine v. Messmore et al.,* 184 Mo. 298, 82 S. W. 115; *Bell v. Nims et al.,* 51 Ill. 171; *Van Campen v. Ribble et al.,* 17 N. J. Law, 433; *Ark. & Okla. R. R. Co. v. Powell,* 104 Mo. App. 362, 80 S. W. 336; *Peters v. Edge,* 87 Mo. App. 283; *Hamilton v. Pidcock,* 18 N. J. Law, 435; *Whitehill v. Bank,* 1 Watts (Pa.) 396; *Bank v. Hinchcliffe,* 4 Ark. 444; *McJenkin v. State Bank,* 7 Ark. 232; *Browdie v. Whitfield,* 7 Ark. 515; *State v. Ritter,* 9 Ark. 244; *Wilson v. Dean,* 10 Ark. 308; *Crow, Adm'r, v. Hardage,* 24 Ark. 282.

Finding no error in the remaining assignments of error, the judgment of the trial court is affirmed.

All the Justices concur.