### SCOTT v. ABRAHAM (two cases).

No. 7359—Opinion Filed July 11, 1916.

(159 Pac. 270.)

**1. Guardian and Ward—Appointment—Sale of Land—Collateral Attack—Grounds.**

A judgment of a county court appointing a guardian, and thereafter ordering a sale of the minors' land, both the judgment and the proceedings leading up to it being regular upon their face, is not subject to collateral attack in an action of ejectment by the minors to recover the land, upon the ground that the minors at the time the guardian was appointed were not residents of the county in which the guardian was so appointed.

**2. Same—Rights of Purchaser.**

A purchaser at a guardian's sale, all the proceedings relating thereto being regular upon their face, may not be ousted by reason of fraud of the guardian inducing such sale, where the purchaser did not participate in or have knowledge of such fraud.

(Syllabus by Burford, C.)

Error from District Court, Creek County; Wade S. Stanfield, Judge.

Actions by Daisy Scott, by her next friend, against Joe Abraham, and by George Washington Scott, by his next friend, against the same defendant, in ejectment and to cancel certain deeds. Judgment for defendant, and plaintiffs appeal. Affirmed.

W. Morris Harrison and R. C. Allen, for plaintiffs in error.

W. O. Beall, W. L. Cheatham, and R. B. Thompson, for defendant in error.

Opinion by BURFORD, C. Two suits were instituted in the district court of Creek county by Daisy Scott and George Washington Scott, by their next friend, against Joe Abraham, to recover certain tracts of land, and to have the deeds thereto by one Charlie Scott, executed while acting as their guardian, set aside. The petitions were practically identical, and the causes were consolidated in the trial court and here. The petitions alleged in substance that these minors were children of Alec Scott, a member of the Creek Nation, and his wife, a noncitizen; that Alec Scott had murdered his wife, and had been sentenced to life imprisonment at the federal penitentiary at Leavenworth, Kan., where

subsequently he died; that both father and mother were residents of what is now Creek county, Okla., and that the children were residents of Creek county, except that during a portion of their life they had removed with a relative to the state of Durango, Mex. It is alleged that they had never at any time been residents of Haskell county, Okla.; that one Charlie Scott had procured himself to be appointed their guardian in the county court of Haskell county, Okla., and that this appointment was fraudulently procured by the said Charlie Scott, and the defendant, Joe Abraham; that thereafter the lands of these minors were sold, and the defendant, Joe Abraham, became the purchaser, and that the deeds executed by Charlie Scott, as guardian, to Joe Abraham were, by reason of the premises, void. The defendant admitted possession of and claim to the lands in question, but denied any fraud on his part, and alleged that the proceedings in the county court of Haskell county were regular upon their face, and that his title was good. Upon these pleadings the cause was tried to a jury, who returned a verdict in favor of the defendant. After motion for new trial was filed and overruled, the plaintiffs bring the cause here for review.

The questions involved in the specifications of error may be fully considered under two subdivisions of one proposition, to wit: Was the judgment of the county court of Haskell county subject to attack in this action (1) for lack of jurisdiction; (2) under the allegations of fraud as set out in the petition?

Upon the first proposition defendant in error urges that the instant suit constitutes a collateral attack upon the judgment of the county court, and that as such it cannot be maintained upon the allegations of the petition. Although this court has many times followed the broad rule laid down in Southern Pine Lumber Co. v. Ward, 16 Okla. 131. 85 Pac. 459, to the effect that "the jurisdiction of any court exercising authority over a subject, may be inquired into in every court, when the proceedings of the former are relied on and brought before the latter, by any party claiming the benefit of such proceedings" (Earl v. Earl, 48 Okla. 442, 149 Pac. 1179; In re Moore's Guardianship, 51 Okla. 731, 152 Pac. 378; Jefferson v. Gallagher, 56 Okla. 405. 150 Pac. 1071; Sharp v. Sharp [No. 7334, not yet officially reported] 166 Pac. 175), yet the rule is subject to the limitation that where it was necessary for the court rendering the judgment to pass upon a matter of fact in order to determine its own jurisdiction, its determination of that matter of fact is ordinarily impervious to attack in any collateral proceeding involving such judgment. In the instant case

the proceedings of the county court of Haskell county are conceded to be regular upon their face; the petition for the appointment of a guardian alleged that the residence of the minors was in Haskell county. It was necessary for the county court of that county to determine their residence as a matter of fact as a prerequisite to exercising jurisdiction. Having done so the determination of the court may not be collaterally attacked upon the ground that the finding upon which jurisdiction was based was untrue. These principles, and that the instant case constitutes a collateral attack upon the judgment of the county court, are firmly established by the decisions of this court in Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090, and Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184. In the latter case it was said:

"Where, in an action of ejectment joined with one to clear title, plaintiffs, in order to prove title in themselves, assailed the validity of the record in the county court appointing for them a guardian, who, as such, pursuant to an order of the court, had subsequently sold and conveyed the land in controversy to defendant's grantee, held, that such was a collateral attack, and that the record, being one of a court of general jurisdiction as to probate matters, could not be impeached by evidence aliunde."

And again:

"The record of the county court of Atoka county being silent as to the factum of the residence of the minors at the time said appointment was made, and the court being one of general jurisdiction as to matters probate, the trial court did right in passing on the motion to direct a verdict, to lay out of the case said evidence as to the residence of the minors, at the time the appointment was made and to hold, as he did, in effect, that such was a collateral attack on the record of that court, which, importing as it does absolute verity, was not subject to be impeached by evidence aliunde."

We therefore conclude that the judgment of the county court of Haskell county was not subject to attack in this action upon the ground that the minors were not residents of Haskell county at the time their guardian was appointed.

Now as to the question of fraud here involved. It is settled in this court that in this sort of an action, where fraud of certain kinds is properly alleged and proved, the judgment of another court, relied upon in the action on trial, may for the purposes of that action be set aside or disregarded, and this whether such an attack be properly designated as a direct or collateral attack. Continental Gin Co. v. De Bord, 34 Okla. 66, 123 Pac. 159; Brown et al. v. Trent. 36 Okla. 239, 128 Pac. 895; Sockey v. Winstock, 43 Okla. 758, 144 Pac. 372; Elrod v. Adair, 54

Okla. 207, 153 Pac. 600. As was said in the latter case, "Under either doctrine it is a permissible attack."

But nevertheless the allegations of error here made in this regard cannot be sustained. In the first place it is doubtful if the petition sufficiently alleged fraud in procuring this judgment. After alleging the appointment of Charlie Scott as guardian, it is alleged:

"This appointment was fraudulently procured by and through said Charlie Scott and defendant Joe Abraham with the intention of cheating and defrauding this minor out of her property."

The above is the only allegation of fraud in the petition. It states a conclusion rather than any facts from which fraud could even be inferred. The only other facts alleged relating to the procurement of the appointment of Charlie Scott as guardian are to the effect that the minors were not residents of Haskell county at the time of his appointment. We have already seen that the determination of the county court upon this point cannot be here called in question. If we go further and say that since the petition alleged nonresidence of the minors in Haskell county, the finding of the county court that they did live there, which finding is conclusively presumed (Hathaway v. Hoffman, supra), must have been based upon perjured testimony, still the issue was not triable in this case, for it is fraud or perjury aliunde the record, which may be inquired into and not perjury involved in the matter actually determined (Brown v. Trent, supra; McElrod v. Adair, supra). Were it not so there would be no end of litigation, since in every case where there was a conflict of evidence the unsuccessful party would immediately sue to set aside the judgment on the ground that his adversary gave perjured testimony. The rule has had some apparent limitations in this court (El Reno Mut. Ins. Co. v. Sutton, 41 Okla. 297, 137 Pac. 700, 50 L. R. A. [N. S.] 1064), but a careful examination will reveal that the distinctions made were upon the facts rather than the rule of law. In the case last cited it was said:

"Nor will relief be granted in equity, unless the fraud complained of is extrinsic to the matter tried in the primary suit." And: "The fraud, in our opinion, was extrinsic and collateral acts not involving the merits of the case as shown by the pleadings, and which was not an issue inquired about in the original case."

Finally, if it could be conceded that fraud was sufficiently alleged and proven, still the plaintiff in error is met by the fact that this question was submitted to the jury upon con-

flicting testimony, and they found against the fraud. This court is in no better position to determine this question than the trial court and the jury. It is urged that the question was not properly submitted because the trial court instructed the jury to the effect that even if fraud were committed they must find that Abraham participated in it, or had knowledge thereof, before they could annul his title. Arnold v. Joines, 50 Okla. 4, 150 Pac. 130, is cited in support. We there held that purchasers of property at a judicial sale were privies to the judgment authorizing the sale and concluded by it, but this is far from saying that even privies are bound to know of a fraud perpetrated in obtaining a judgment, when they had no participation in such fraud. However strongly the doctrine of caveat emptor may be applied to purchasers at judicial sales, we think it does not extend to charging the purchaser, regardless of his participation therein, with the results of fraud in obtaining the judgment upon which the sale is based. Fraud, not shared by the purchaser, never renders a judicial sale void, as distinguished from voidable.

The proceedings in the county court are conceded to be regular upon their face; yet it is sought to charge Abraham, who, under the verdict of the jury, knew nothing of any fraud, with a loss of the property purchased at a judicial sale, because the guardian acted fraudulently. Such is not the law. Arnold v. Joines, supra, is itself authority for the proposition that it is purchasers at void, and not voidable, sales who lose their right to the property acquired by the sale. The rule is well stated, in the authorities collated, by Mr. Freeman in his work on Void Judicial Sales:

"It is a general rule that one who purchases at a judicial, probate, or execution sale, cannot be deprived of his title by secret frauds or irregularities, in which he did not participate, and of which he had no notice. Hence an administrator's sale cannot be avoided by showing that he procured his license to sell by fraud and misrepresentation, in the absence of any necessity, and with the design of sacrificing the interest intrusted to his care. Nor can an innocent purchaser be injuriously affected by proof of any mistake, error, or fraud of an administrator or guardian in conducting a sale."

We conclude that there was no error in instructing the jury that Abraham must have participated in any fraud in leading up to the sale before his title thereunder could be avoided.

It is strongly urged that these minors have been deprived of their property without any return. The record tends to show payment of a purchase price of $2,300. The guardian or his bondsmen should be responsible for a proper accounting therefor. However this may be, our holding here is not conclusive of any rights the minors may have, but simply that relief cannot be afforded in this action. As was said in Sockey v. Winstock, 43 Okla. 758, 144 Pac. 372, supra:

"A failure to adhere to established rules of procedure, when based upon sound principles and reason, in an attempt to correct injustice in individual cases, would be to weaken and eventually destroy one of the most important means through which justice is distributed to all the people."

Judgment affirmed.

By the Court: It is so ordered.