**LANGLEY v. FORD et al. (two cases).**

No. 7392—Opinion Filed June 6, 1917.

Rehearing Denied March 19, 1918.

(171 Pac. 471.)

(Syllabus.)

1. **Guardian and Ward — Sale of Land — Collateral Attack.**

Where the proceedings of the county court appointing a guardian for certain minors, and thereafter ordering a sale of the lands of said minors, are regular, the record cannot be collaterally attacked in an action to foreclose a mortgage upon said lands, executed by the purchaser at the guardian's sale, in the absence of fraud.

2. **Same — Mortgage Lien — Validity.**

Where all the proceedings are regular upon their face, and the purchaser at such guardian's sale executes a mortgage upon said lands, the lien of the mortgagee may not be defeated for fraud affecting the sale, where the mortgagee did not participate therein or have notice or knowledge thereof.

3. **Indians — Allotments — Restrictions on Alienation — Acts of Congress.**

All restrictions upon the alienation of the allotments of minor allottees of the Five Civilized Tribes having less than one-half Indian blood, and the restrictions upon the alienation of all lands except homesteads of said allottees enrolled as mixed blood Indians of one-half or more than one-half and less than three-fourths Indian blood, are removed by Act Cong. May 27, 1908, c. 199, 35 Stat. 312.

4. **Guardian and Ward — Sale of Ward's Land — Fraud —Setting Aside Sale.**

Where a guardian sells the lands of his ward on a secret understanding that the

purchaser will not pay for same, and the sale is confirmed by the court, and deed executed and delivered to the purchaser, such facts constitute a fraud upon the estate of the ward, and the sale may be set aside in an action by the ward against the purchaser or any other person who acquires rights in said lands with knowledge or notice of such secret fraud.

**5. Same.**

A sale by a guardian of real estate belonging to his wards, to his wife through the interposition of a third person, is not void absolutely, but may be set aside in an action brought for that purpose against the purchaser or wife of the guardian or some one claiming under him or her, with knowledge of the circumstances of the sale, or one who was not a bona fide purchaser or incumbrancer thereof, for good and sufficient consideration, and without notice.

**6. Principal and Agent — Notice to Agent —Effect.**

One who on behalf of a loan company, takes an application for loans, which application is required to contain a detailed description of the property and the occupancy thereof, with the applicant's statement as to the condition of his title, which application, accompanied by an abstract showing the condition of the record concerning the title of the applicant to the property offered as security for the loan, is forwarded to the company, where the application and abstract are submitted to its attorney for an opinion as to the title of the applicant, and the necessary papers prepared and sent to the person taking the application to secure the execution thereof by the prospective borrower, is agent of the loan company, and notice of all knowledge acquired by him affecting the subject-matter of the agency, while acting within the scope of his authority, will be imputed to the company.

Error from District Court, Jefferson County; Frank M. Bailey, Judge.

Action to foreclose a mortgage by E. E. Ford against James T. and Lula Rouark, with order making Samuel L. Langley, Matilda Sarah Langley, minor, and Thomas H. Hayes parties, and in which J. B. Moore was appointed guardian ad litem for the minor, consolidated with action by E. E. Ford against Clyde Edward Langley, minor, on similar pleadings and issues. Judgment for plaintiff decreeing foreclosure, and motion for new trial overruled, and the minors bring error. Judgment reversed and cause remanded.

R. B. Brown, U. S. Probate Atty., and J. B. Moore, for plaintiffs in error.

Charles B. Mitchell, H. A. Kroeger, and Cottingham & Hayes, for defendants in error.

HARDY, J. E. E. Ford, as plaintiff, commenced an action to foreclose a mortgage upon certain lands theretofore comprising a portion of the allotment of Matilda Sarah Langley, a Choctaw Indian minor, which mortgage had been executed to secure a note of $1,000, representing the commission for a loan made by the Deming Investment Company on said premises. The defendants James T. and Lula Rouark filed an answer in which they alleged that the guardian's deed executed by Samuel L. Langley, guardian of said minor, to one Hays, and the conveyance from said Hays to Calcie Lee Langley, mother of said minor, were sham and bogus transactions, and each without consideration supporting it, and made for the purpose of defrauding said minor out of said lands; that said facts were known to plaintiff at the time said mortgage was executed, or could have been known by the exercise of care or prudence; and prayed an order making said guardian and Matilda Sarah Langley, the minor, and Thomas H. Hays, parties to the litigation; and further prayed that a guardian ad litem be appointed to represent said minor: whereupon J. B. Moore, Esq., United States probate attorney, was appointed as guardian ad litem for said minor, and filed an answer and cross-petition in her behalf, alleging that she was a member by blood of the Choctaw tribe of Indians, was 13 years of age, and had selected as a portion of her allotment the land described in plaintiff's petition; denied that plaintiff acquired any rights under his mortgage, or that Hays, the mortgagor, had any interest in said premises which he could mortgage, and challenged the jurisdiction of the county court of Jefferson county to appoint a guardian for said minor for the reason that at the time of said appointment said minor was not a resident of that county; and alleged that said sale was brought about at the instance of the agent of plaintiff, for the purpose of defrauding her out of said lands, and that the purchaser at said guardian sale paid no consideration for a deed thereto, and never took possession of said lands, and that the deed from Hays, the purchaser at said guardian's sale, to Calcie Lee Langley, the mother of said minor and wife of the pretended guardian, was void; and prayed an order canceling plaintiff's mortgage, the said guardian's deed, and the order of the county court confirming said sale. To this answer and cross-petition plaintiff filed reply.

At the time plaintiff filed another action to foreclose a mortgage upon certain

lands comprising a portion of the allotment of Clyde Edward Langley, a minor, in which case similar pleadings were filed, joining identical issues. By order of court these two cases were consolidated and tried as one in the trial court, and upon appeal have been so treated. Judgment was rendered. holding that the conveyances made by the guardian were voidable and not void; that plaintiff's mortgages were valid, and that one L. W. Tarkington was the agent of plaintiff and had knowledge of the fraud in said guardian's sale, but owing to his limited scope of agency, and from the fact that he participated in the fraud, notice thereof would not be charged to plaintiff; and judgment was rendered in favor of plaintiff, sustaining the validity of his mortgages, and decreeing a foreclosure thereof. and all other conveyances were declared null and void and canceled. Motion for new trial being filed and overruled. the minors bring the case here.

The first proposition urged for reversal of this case is that the county court of Jefferson county had no jurisdiction to appoint a guardian for said minors because, at the time of the alleged appointment, both of said minors were residents of Love county, and it is contended that this question can be raised in this proceeding, which is characterized as a direct, and not a collateral, attack. It has been held a number of times upon similar facts that the jurisdiction of the court appointing a guardian for a minor cannot be raised in this character of proceeding, which is held to be a collateral attack.

In Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090, it was held in a cross-action to quiet title, where it appeared upon the face of the record that the minor appeared in court and testified that he was 18 years old and his father and mother were dead, and that no notice was given to any one before making the appointment of a guardian for said minor, that, the county court being a court of general jurisdiction as to probate matters. it would be presumed from the fact of appointment that the court heard further evidence, and found that the minor was in the care of no one and had no relatives residing in the county, and that there was no one to whom the judge could give the notice prescribed by section 6522, Rev. Laws 1910, and that the appointment was good. And it was further held that the records of the county court could not be collaterally attacked by evidence aliunde that the minor was at the time in the care of some one and had relatives residing in the county.

In Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184, plaintiffs brought an action in ejectment, and in support of their claim assailed the validity of the records of the county court appointing a guardian for them, who had, pursuant to an order of the court, sold and conveyed the land in controversy to defendant's grantee, and it was there held that such proceeding was a collateral attack, and that the record, being one of a court of general jurisdiction as to probate matters, could not be impeached by evidence aliunde, and that the court did right in directing a verdict for the defendant notwithstanding the plaintiffs had introduced parol evidence, over objection, that the minors for whom a guardian had been appointed by the court. at the time of the appointment resided in a county other than that in which the appointment was made, as the evidence was held to be incompetent.

If it be sought to distinguish this case from the two cases cited on the ground of fraud in procuring the appointment by offering false testimony in support of the application for such appointment, the claim will not avail anything; for the precise question was presented in Scott v. Abraham, 60 Okla. 10, 159 Pac. 270, where it was sought to set aside a guardian's deed on the ground that at the time of the appointment the minors were not residents of the county in which the appointment was made. In the opinion by Commissioner Burford it was said:

"If we go further. and say that. since the petition alleged nonresidence of the minors in Haskell county, the finding of the court that they did live there, which finding is conclusively presumed (Hathaway v. Hoffman, supra), must have been based upon perjured testimony, still the issue was not triable in this case; for it is fraud or perjury aliunde the record, which may be inquired into, and not perjury involved in the matter actually determined (Brown v. Trent [36 Okla. 239, 128 Pac. 895]; Elrod v. Adair [54 Okla. 207, 153 Pac. 660] supra). Were it not so, there would be no end of litigation, since in every case where there was a conflict of evidence, the unsuccessful party would immediately sue to set aside the judgment on the ground that his adversary gave perjured testimony."

These decisions declare the rule which has been adopted by this court after full and mature consideration, and which has been adhered to since the decision in Baker v. Cureton. and may be said to declare the settled views of this court upon the questions involved.

It is next urged that, inasmuch as the lands embraced in plaintiffs' mortgage con-

stituted a portion of the allotment of Indian minors, the title thereto could not be divested except by proper proceedings in the county court, and that any other attempted alienation would be null and void, and that the title thereto could not be acquired by any other method. Under this proposition it is argued that minority constitutes a restriction which can only be removed by a strict compliance with the law regulating probate sales of the lands of minors in the county court, and that the payment of the purchase price was a condition precedent to the passing of title, and that where the purchase price has not been paid, even though the sale has been confirmed and the record in every way was regular and fair upon its face, the guardian's deed would be absolutely void, and it would be impossible for a person without notice to acquire any rights therein. These questions were presented and fully considered in Allison v. Crummey, 64 Okla. 201. 166 Pac. 691, where it was held that all restrictions upon the alienation of the allotments of minor allottees of the Five Civilized Tribes having less than one-half Indian blood, and the restrictions upon the alienation of all lands except homesteads of said allottees enrolled as mixed-blood Indians of one-half or more than one-half and less than three-fourths Indian blood, were removed by act of Congress May 27, 1908, c. 199 (35 Stat. L. pt. 1, 312) ; and it was further held that where a guardian sells the land of his ward in pursuance of an order of sale regularly made. upon a secret understanding that the purchaser shall pay no consideration therefor, and where such sale was confirmed by the court and a deed executed and delivered to the purchaser, that such facts constituted a fraud upon the estate of the ward, and the sale might be set aside in an action by the ward against such purchaser or any other person who acquires rights in said lands with notice of such secret fraud, and that, while such sale was voidable as to the purchaser or other persons acquiring rights therein with notice, the rights of an innocent purchaser or incumbrancer without participation in or notice of such fraud would be protected. That decision disposes of this contention in the present case.

It is also urged that the deeds made by the guardian are void because the sale was in fact an indirect sale to the guardian through the interposition of a third person. As to the allotments of Matilda Sarah Langley, it appears that Hays, the purchasor at the guardian's sale conveyed the premises to Calcie Lee Langley, the mother of said minor and the wife of the pretended guardian. The facts in reference to this allotment are somewhat similar to the facts in Burton v. Compton, 50 Okla. 365, 150 Pac. 1080, where the guardian sold the estate of his ward to his own wife, and the deed was held to be void regardless of the absence of fraud, the adequacy of price, or the apparent regularity of the proceedings, on the theory that such transactions are prohibited by statute and condemned by public policy, and that one who purchased from the vendee of a guardian's sale must take notice at his peril of the authority of the guardian to make the sale; and where sufficient facts appear or were suggested by the record, in connection with other circumstances brought to his notice, to put a reasonably prudent man on inquiry, and he neglects to make such inquiry, he will be held to have actual knowledge of the channel through which his grantor claims title, and that her grantor in the guardian's deed under which she held was in fact her husband.

The difference between that case and the one now under consideration is that here Langley, the guardian, made a conveyance to Hays, who paid no consideration therefor, and Hays reconveyed to Calcie Lee Langley, the wife of the guardian, while in the Compton case the guardian conveyed directly to his wife, and Burton, the purchaser from her, was held to have notice because of the identity in the name of the guardian and his grantee. It is contended that plaintiff is not put upon notice of the relationship between the guardian and Hays, grantee, or of the lack of consideration in the conveyance from the guardian to Hays, or from Hays to the wife of the guardian, and therefore the case of Burton v. Compton is not conclusive. Mr. Justice Brett, who wrote the opinion in that case while on the Commission, expressly calls attention to the fact that the rights of no innocent third person had intervened. In Allison v. Crummey the guardian had executed a conveyance to a third person, who had in turn reconveyed to the guardian. and the contention was made that such deed was void because it was sold by the guardian to himself indirectly. That contention was rejected, however, and the rule was declared to be that:

"A sale by a guardian of real estate belonging to his ward to himself, through the interposition of a third person. is not void absolutely, but is voidable in an action brought to set aside the sale as against the purchaser or guardian or some one claiming under him with knowledge of the circumstances of the sale, or one who was not a

bona fide purchaser or incumbrancer for good and sufficient consideration and without notice."

The present case more nearly comes within the rule quoted, for here the sale was not direct to the wife of the guardian, as in Burton v. Compton, but was to his wife through the interposition of a third person.

The question then remains whether the plaintiff had knowledge of or should be charged with notice of such facts as would avoid the sale, or whether, on the other hand, he was an innocent incumbrancer for value without such notice. The Deming Investment Company was represented in securing the application for the loan by one L. W. Tarkington as local agent. Plaintiff is an employe of the Deming Investment Company, and the notes represented the commissions charged by the Deming Investment Company in addition to interest at the rate of 6 per cent. upon the principal amount of the loan. It was Tarkington's duty to procure from prospective borrowers a written application which should contain minute information concerning the property offered as security, showing the description of the land and the character and amount of crops growing thereon, including the kind and age of fruit trees; the number of acres in meadow and timber; number of acres in cultivation and capable of being placed in cultivation; the character, description, and age of fences and hedges; the character, depth, and quality of the soil; the cash value of the farm improvements; when the buildings were erected, together with the material out of which constructed; the size and description thereof in detail; the amount of insurance on the property; existing incumbrances; purpose for which the money was wanted; also the number and value of agricultural implements and live stock and by whom and for what purpose the buildings were occupied and used; and a statement by the applicant of the condition of his title thereto and the occupancy of the premises.

It is admitted that, for the purpose of procuring the application, Tarkington was the agent of plaintiff; but it is contended that the knowledge obtained by him should not be imputed to his principal, because it was not within the scope of his authority to acquire such information. This contention is without merit. It was within the scope of his agency in procuring the application to obtain information with reference to all the matters above enumerated, whatever the nature of that information, which, in connection with an abstract submitted therewith, would enable attorneys for the company to pass upon the legal sufficiency of the title in order to permit the company to determine whether a loan should be made, and it was his duty to communicate the same to his principal. Allison v. Crummey, supra.

Plaintiff contends, however, that notice of information acquired by Tarkington should not be imputed to him, because Tarkington was acting for himself, and because the circumstances clearly show that he was engaged in a scheme to defraud plaintiff, and therefore the presumption that he would communicate such knowledge to his principal would not prevail. The rule which imputes notice to a principal of knowledge acquired by his agent, relating to the subject-matter of the agency while acting as such agent and within the scope of his authority, is usually based upon the theory that it is the duty of the agent to communicate to his principal all knowledge acquired by him relating to the subject-matter of the agency which is material to the principal's interests and protection, and the presumption that such knowledge has been communicated to the principal in accordance with this duty. This presumption does not ordinarily obtain, however, where the circumstances are such that it is certainly to be expected that the agent will not communicate his knowledge to the principal, as where the agent is acting on behalf of himself or another and adversely to his principal or is engaged in some fraudulent enterprise, the success of which would be impaired or defeated by making such disclosure to the principal. Mechem on Agency (2nd Ed.) § 1815. The mere face that the agent has knowledge of fraud attending the transaction in which he is engaged does not prevent the general rule from applying where the agent is acting merely for his principal, and is not committing an independent fraud on his own account. Indianhead Nat. Bank v. Clark, 166 Mass. 30, 43 N. E. 912.

The notes sued upon were made payable to plaintiff by the direction of the Investment Company. It does not appear that he paid anything of value for the notes. Tarkington was the agent of the plaintiff for the purpose of securing said notes, and had full knowledge of the fraud attending the transaction, at the time the notes were executed and transmitted by him, and when plaintiff sought to recover upon these notes, with notice of such facts, he must accept the knowledge of his agent, and be bound thereby to the same extent as if the notes had been taken by him in the light of the knowledge possessed by Tarkington. Plaintiff must be

deemed to know what his agent knew, and cannot retain the benefits of that agent's acts without accepting the consequences of his knowledge. He cannot be permitted to obtain any greater rights from the acts of his agent than if he did the thing himself, knowing what the agent knew; that is, he cannot ratify the acts of the agent so far as beneficial to him, and repudiate the remainder. If he accepts any benefit flowing from the acts of the agent after he knows and appreciates what his agent has done, or with notice which the law imputes to him, he will not be permitted to say that the agent acted for him in procuring the note, and repudiate the agency when it is sought to impute to him knowledge of facts affecting the note acquired by the agent within the scope of his authority and concerning the subject-matter of the agency. First Nat. Bank v. Dunbar, 118 Ill. 625, 9 N. E. 186; Fouche v. Merchants' Nat. Bank, 110 Ga. 827, 36 N. E. 256; Morris v. Georgia Loan Co., 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 506; Warren v. Hayes, 74 N. H. 355, 68 Atl. 193; Bank of New Milford v. Town of New Milford. 36 Conn. 93: Loring v. Brodie, 134 Mass. 453; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268 17 N. E. 496, 9 Am. St. Rep. 698; Holden v. N. Y. & Erie Bank et al., 72 N. Y. 286; Fishkill Savings Inst. v. Bostwick, 19 Hun (N. Y.). 354; Smith v. Farrell, 66 Mo. App. 8.

Whatever may be the law with reference to the notes representing the principal amount of the loan which have been negotiated by the Deming Investment Company and are now presumably in the hands of an innocent holder for value without notice, and in the due course of business, plaintiff cannot invoke the rule relied upon and successfully evade notice of that knowledge possessed by his agent which would defeat a recovery herein. Tarkington was not engaged in any independent fraud on his own account, but when taking the notes sued upon was acting for plaintiff, and, by suing on the notes, plaintiff has ratified that agency with all of its consequences.

Another question that enters into this case is that the evidence fails to disclose that plaintiff performed any services in connection with the loan or that he paid any consideration for the notes.

The judgment is reversed and the cause remanded.

All the Justices concur.