## LUCIAN EVARTS, ADM'R, APPELLANT, *v.* G. W. STEGER, ET AL., RESPONDENT.

REFORMING WRITTEN INSTRUMENT.—A court of equity will make a valid contract operate according to the intent of the parties; but will not give effect to that which is void on its face.

AN administrator's bond failing to express any sum for which the obligors were bound, and no blank being left in such bond: *Held*, that such bond is not a binding instrument, and that the sureties therein are not liable.

APPEAL from Umatilla County.

This is a suit brought by appellant in the circuit court of Umatilla county.

A demurrer was sustained in the court below to plaint-

iff's complaint, and from that judgment this appeal is taken. Plaintiff alleges that Jacob Yarlett died intestate April 20, 1871, and that defendant Steger was appointed administrator of his estate. That in pursuance of such appointment, Steger, as principal and the other defendants as his sureties, signed an instrument in writing, of which the following is a copy.

" Know all men by these presents, that George W. Steger as principal, and John T. Davis, William Penland, Nelson Jones and John T. Hinton, as sureties, are held and firmly bound unto whom it may concern, for which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals, and dated this twelfth day of June, 1871.

" The conditions of the above obligation is such that whereas the above bounden George W. Steger has been appointed administrator of the estate of Jacob Yartell, deceased, by the order of the county judge of Umatilla county, Oregon. Now, therefore, if the said George W. Steger shall faithfully perform the duties of his trust according to law, then this obligation to be null and void; otherwise to be and remain in full force and effect."

*Lucian Evarts,* for appellant:

In reforming a written contract, where an omission has been made in writing by mistake, the court does not extend its terms. It merely inserts into the writing one or more provisions which are a part of the actual contract, but which the parties, or their draftsman, have omitted therefrom by mistake. The writing is not the contract itself, but merely the evidence of its terms, and it is only *prima facie* evidence at that. (Civ. Code, sec. 682.) The doctrine that courts of equity will reform mistakes against sureties is well settled. (51 Mo. 98; 1 John. ch. 607; 6 Id. ch. 302, 307, 309; 7 Conn. 549; 41 N. Y. (2 Keyes) 530; Prec. in Ch. (Eng.) 309; 3 Abb. (N. Y.) App. Dec. 654, cited in 4 Abb. U. S. Dig. (N. S.) 459, secs. 4 and 5; 24 Vt. 187, cited in 13 U. S. Dig. 226, sec. 46; 2 Haywood

(N. C.) cited 2 U. S. Eq. Dig. 287, sec. 78; 3 Iredell Ch. (N. C.) 589, cited in 2 U. S. Eq. Dig. 284, sec. 18; 11 Gill & J. (Md.) 457, cited in 2 U. S. Eq. Dig. 284, sec. 15.)

The complaint clearly shows that the mistake was mutual, so far as it is necessary that such a mistake should be mutual in order to give a court of equity jurisdiction to reform it. "Where a party who is to execute papers in consummating a contract, draws or causes or procures them to be drawn erroneously, and palms or puts them off upon the opposite party in that shape, without apprising him of the error or alteration, he commits a fraud, and relief in equity in reforming the instrument may be had on the ground either of mistake or fraud." (45 Barb. 478; 1 Peters, 13; 48 N. Y. 424; 11 Geo. 159, cited in 14 U. S. Dig. 211, secs. 41–50; Willard's Eq. Jur., 617; 19 Cal. 672.) And courts of equity will sometimes assume jurisdiction to enforce defective instruments without reforming them. (5 Johns. Ch. 225, 228; 15 La. Ann. 551, cited in 23 U. S. Dig. 264, sec. 189.)

Parties to a fraud are entitled to no favor in a court of equity, and if the sureties, or any of them acted in a fraudulent manner, as is alleged in the tenth paragraph of plaintiff's complaint, that fact furnishes an additional reason why they should be held liable for Steger's misconduct. Plaintiff therefore claims that the court erred in striking out said tenth paragraph. (7 Conn. 544, 549; 3 Sand., S. C. 671.) The form of the bond or undertaking is immaterial, provided it substantially meets the requirements of the statute. (15 Peters, 290; 42 Barb. 528; Code of 1862, sec. 1056.) Where words of inheritance are omitted in a deed by the ignorance or mistake of the draftsman, a court of equity will supply them. (3 Jones Eq., N. C., 96.) Where both parties intend to execute an instrument which shall accomplish a certain object, but which, through the ignorance or want of skill of the draftsman, fails to do so, equity will reform the mistake, no difference whether it be called a mistake of fact or of law. (48 N. Y. 424; 1 Peters, 13; 11 Geo. 159, cited in 14 U. S. Dig. 211, sec.

31; 11 Ohio, 480; 8 Wheat. 211; 1 Story's Eq. Jur., secs. 136, 168, 172.)

Where a surety signs a bond in which the amount of the penalty is omitted, that amount may afterwards be inserted by an agent, and his authority for so doing may be either express or implied. (53 Maine, 89; 31 Iowa, 272; Code, sec. 743.) A bond in which the amount of the penalty was omitted perfected and set up in equity. (2 Hill Ch., S. C., 6.)

*Dolph, Bronaugh, Dolph and Simond,* for respondents.

It is held by the courts that such an instrument of writing as that described in the complaint in this cause is void; that an intended bond in a blank penal sum is a nullity. (*Church* v. *Noble,* 24 Ill. 291; *Case* v. *Pettee,* 5 Gray, 27; *Lindley* v. *Smith,* 58 Ill. 250; *Drury* v. *Foster,* 2 Wall, 33, 34; 1 Ab. Nat. Dig. 332, sec. 8.)

So it is held that where a sheriff's bond was signed by himself and sureties the amount of the penalty not being inserted, and afterward by order of the court of common pleas the words "fifteen thousand" were inserted in the blank space left for that purpose, that without the sum inserted the bond is of no validity, and that such blank could not be filled. (*State of Ohio* v. *Boring,* 15 Ohio, 507; *Famulener* v. *Anderson,* 15 Ohio St. 473; *Preston* v. *Hull,* 23 Grattan, 602.)

An agreement to answer for the debt, default or miscarriage of another, must, by the provisions of the statute of frauds, be reduced to writing, and if one intending to bind himself as surety for another, execute a writing which is invalid, or so imperfect as to fail of the object intended, a court of equity cannot reform such contract, or compel such surety to execute a valid or perfect agreement, upon the ground that he has attempted to do so, but has failed of accomplishing his object by mistake or inadvertence. (*Ontario Bank* v. *Mumford,* 2 Bart. Ch. 613 ; *Phelps* v. *Garrow,* 8 Paige Ch. 322; Code, p. 264, sec. 775, sub. 2; *Wing* v. *Terry,* 5 Hill, 160; 3 Pars. on Cont. 397.)

By the Court, BOISE, J.:

It is alleged in the complaint that in making said writing, by mistake immediately after the word "concern," the words "in the sum of ten thousand dollars, payable" to whom it may concern, were omitted, or other apt words expressive of the amount which the parties to said writing attempted and intended to become bound; and the complaint alleges that said defendants intended to insert said words in said instrument, and to have them remain therein at the time of the execution, delivery and filing by them; and further alleges that said sureties did justify under oath in the aggregate in the sum of ten thousand dollars. The question presented is: 1. Whether a court of equity can reform this instrument by inserting the penalty. The appellant's counsel cites 51 Mo., which maintains the proposition that a court of equity may reform a bond by inserting the penalty, but that case did not directly involve that point, as it was not the point in the case, as in that case there was a blank left unfilled in the bond. The case of *Wight* v. *Harris*, 31 Ind., and all the other cases cited, were cases where there was a blank left in the bond, which must have been seen and recognized when the bond was signed. The court held that the blank was filled by the authority of obligors, and the decisions were placed on the ground that the obligors knew that something was to be added.

The writing sought to be reformed in this case has no open blank left to be filled, but is written without a blank opening on its face, but leaving out certain words usually inserted in a bond, and which words so left out are vital to its validity as a bond. It was an attempt to make a bond, but a failure to create such an instrument as much so as it would be a failure to make a promissory note by a writing a promise to pay any sum of money.

The bond, as it is now, is not a binding instrument, rendering the sureties liable for the default of the principal. Courts of equity will enforce written instruments where by the mutual mistake of the parties in a matter of fact the instrument cannot be enforced as the parties intended; but

such courts have generally refused relief when an obligation
not named in the contract to be reformed is sought to be
added; or where the original contract is void, and conse-
quently of no binding force.   (Smith's Lead. cases in Eq.,
vol. 2.)

That is, a court of equity will make a valid contract
operate according to the intent of the parties, but will not
give validity to that which is void on its face.   Contracts
can be reformed by courts of equity to carry out the mu-
tual understanding of the parties, but there must be a con-
tract to reform.

In this case, if there be a contract it is in parol, for the
writing set out in complaint is no contract.   (Pars. on
Cont. 397; *Church* v. *Noble,* 24 Ill. 291; *Case* v. *Patton,* 5
Ga. 27, 250; *Lindley* v. *Smith,* 58 Ill. —; *State of Ohio* v.
*Boring,* 15 Ohio, 507; Id. 473.)

The court is asked to reform this parol agreement and
make it a written contract over the signatures of defend-
ants, and thereby make them obligors to a written instru-
ment which they never signed, for the alleged reason that
they intended to sign such an instrument.   If the court
assumes this authority in this case, it would be a precedent
by which the court can be asked to fill up and insert in a
promissory note in which no sum of money is agreed to be
paid.   Such sum as was agreed by parol should be inserted
so as to attach liability to a surety.   To illustrate: Suppose
A. wishes to borrow money of B., and it is agreed by parol
that B. will loan A. one thousand dollars on his, A.'s, note,
with C. as surety, and A.'s note is attempted to be drawn,
but no sum of money is agreed to be paid in said note, and
it is signed by B. as principal and C. as surety.   It is clear
that a court of equity cannot give this void writing validity
by inserting in it the sum of one thousand dollars, and make
it a good note against the surety.   If a court of equity can
do this it can charge a surety on his parol agreement, which
would annul the statute of frauds.

In the case of *Preston* v. *Hill* (23 Gratton), the name of
the obligor of the bond was blank when the bond was signed
by the surety, and the name of the obligee was inserted by

the principal, and money obtained on it, and the bond was held void as against the surety, for the reason that the instrument when he signed it was not a bond, and it is then asserted that to fill such blanks would be in effect to write a new contract over the signature of the surety. It is claimed by the appellant that the defendants were guilty of a fraud in imposing this imperfect instrument on the county court.

It was the duty of the court to examine and approve the bond. Until that was done it was not accepted and no liability attached. The county judge is supposed to have understood its contents and decided on its validity and sufficiency, and if he did so examine it and pronounce it a good bond, then it was an error in his judicial judgment, and was an error of law and not of fact.

If the county judge had decided this paper was not a good bond, and still had granted letters of administration to Steger, the same evils would have ensued to the estate that are now complained of, and there would be the same justice in reforming this instrument as now.

But suppose the judge had discovered the invalidity of this instrument and called the attention of the sureties to it, and they had then promised him that if he appointed Steger administrator they would execute a bond good in form, could a court of equity compel them to do it by inserting in this instrument the words asked to be inserted? Such a principle would not be contended for; for that would be clearly turning the parol promise of the parties into a written contract, and a court of equity has no such power. To reform this instrument would be extending the reformatory powers of a court of equity beyond any precedent that has been mentioned by counsel, and there seems to be much doubt as to the power of a court of equity to reform a bond by filling a blank when the blank was open on the face of the instrument, and must have been known to the obligors when they signed it. And the authorities are not uniform on that subject, and when it has been maintained it has been on the ground that such authority was given by the obligors. In this case no such authority can be implied

from the instrument, there being no blank in it or allegation that anything was to be added to it.

We think that the decree of the court below dismissing the bill should be affirmed.