### SMITH et al. v. GARNETT.

No. 8244—Opinion Filed Dec. 19, 1916.

(161 Pac. 1083.)

**1. Guardian and Ward — Liabilities on Bonds—Bond for Sale of Realty.**

The' sureties upon a guardian's special bond, given as a prerequisite to the sale of real estate, are not liable for a misappropriation by the guardian of funds not arising from the sale. of the real estate, in relation to whch their bond was given.

**2. Same—Special Bond.**

Bond examined, and held to be a special and ·not a general bond.

**3. Same—Order of Court—Conclusiveness.**

A 'valid final order of the county court, firding only the amount due from a guardian to his ward,. is binding upon both the guardian and his bondsmen liable therefor as to such 'amount due, but it is not binding as to whether the obligation of a particular surety covers liability for a defalcation of such amount by the guardian.'

(Syllabus by Burford, C.)

Error from District Court, Muskogee County; Geo. C. Crump, Assigned Judge.

Action by Philip H. Garnett, administrator, against Thomas P. Smith and another. Judgment for plaintiff, and defendants appeal. Reversed as to plaintiffs in error for further proceedings.

Franklin & Carey, for plaintiffs in .error.

Dan M. Meredith, and W. P. Z. German, for defendant in error.

Opinion by BURFORD, C. ' Philip H. Garnett, as administrator of the estate of Rosa Smith, deceased, sued J. E. Johnson, A. W. Marshall, Thomas P. Smith. and V. R. Coss as sureties, upon certain guardianship bonds. given by Elias Dean as guardian of said Rosa Smith, a minor. It appears that Johnson and Marshall signed the guardian's general bond, did not dispute their liability, and all questions as to them are eliminated here. Smith and Coss were sureties upon a bond executed after the guardianship proceeding was commenced, the condition and obligation of which was as follows:

"The condition of the above obligation is such that whereas, on the 21st day of October, 1911, an order was entered by the county court of Muskogee county, Oklahoma, authorizing the above-named principal, as guardian of the estate of Rosa Smith and Helen Smith, to sell certain real estate belonging to said estate and providing therein that said guardian should give an additional bond in the above-named sum before making such sale: Now, therefore, if the said Elias Dean, as such guardian, shall faithfully execute the duties of such trust according to law, then this obligation to be void, otherwise to remain in full force and effect."

It seems that the guardian died, and thereupon Johnson and Marshall, sureties upon his general bond, filed a final report in the county court. This report was regularly set for hearing, at the hearing was corrected by the county judge, and, as corrected, approved. As this order is the subject of the principal contention here, we set it out in full:

"Now, on this 6th day of April, 1914, there comes on ' for hearing the final reports, filed on the 24th day of January, 1914, by the bondsmen of Elias Dean of the acts and dodoings of the said Elias Dean as guardian of Helen Smith and Rosa Smith, minors. And due notice of said hearing having been 'given, and the court.· having heard and examined said reports, and being well and sufficiently advised in the premises,, doth approve the same as charged. At this time there is due to Helen Smith the sum of $20 and to Rosa Smith the sum of $196.16."

Thereafter the ward Rosa Smith died, and tne administrator of her estate brought the instant action.

Defendants Smith and Coss set up in their answer, to which no reply was filed, and offered to prove on the trial that the bond signed by them was given as a prerequisite to an order of sale for certain of the real property of the minor, that the supposed interest of the minor was sold, but, the nature of the minor's interest being in litigation, the amount of the bid was held in the county court, and upon it being finally determined. in effect, by this court, that said minor had no interest in the land so sold, the sum bid was returned to the prospective purchasers. This proof was refused by the trial judge. but the allegations thereof in the answer were never stricken nor denied by reply. It seems that the trial court proceeded upon the

theory that the order of the county court was conclusive of the liability of the defendants in the absence of proof of fraud in obtaining it. In this he was clearly in error. We do not deem it necessary to decide the question raised in the brief as to the right of the bondsmen to make the final report of the validity of the order of the county court approving the report. Assuming that order to be entirely valid, it could not have the effect given it by the trial court.

It is true that this court has held that a valid adjudication by the county court of the amount due from the guardian to his ward, being unappealed from, is binding, not only upon the guardian but upon his bondsmen (Greer v. McNeal, 11 Okla. 519, 69 Pac. 891; Southern Surety Co. v. Burney, 34 Okla. 552, 126 Pac. 748, 43 L. R. A. [N. S.] 308; Title Guaranty & Surety Co. v. Slinker, 35 Okla. 128, 128 Pac. 696; Henry v. Melton, 46 Okla. 278, 148 Pac. 730, and cases cited), and if the judgment be valid upon its face and the face of the record, and without fraud, it cannot be collaterally attacked. Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184, and Scott v. Abraham, 60 Okla. 10, 159 Pac. 270, are among the latest cases from this court upon that subject, and in them the earlier decisions are set out and reviewed. But here the order of the county court did not attempt to find what sureties were liable for the loss, if any had occurred. Nor do any of our cases go so far as to hold that the order would be binding on the sureties if it did so attempt to bind them. Determining the amount due from a guardian to his ward, the thing directly before the county court, and determining what persons are liable for a defalcation of that amount, a thing not at all before the county court, are entirely different propositions. Inasmuch as the county court did not attempt to determine the parties, other than the guardian, liable for the amount found due, it is not necessary for us to go further than to say that the order approving the final report, if valid at all, was binding as to the amount due from the guardian, but not as to the liability of these defendants to pay that amount if the guardian defaulted. See Lyman v. Conkey, 1 Metc. 317, cited and discussed in Mattoon v. Cowing, 13 Gray, 387-389. Such is the effect of the conclusion reached by this court in Dunleavy v. Mayfield, 56 Okla. 470, 155 Pac. 1145, where it was said:

"Generally an order of the county court, approving a final report and settlement of a guardian, is conclusive on both the guardian

and ward, and is impervious to collateral attack, as to all matters properly included in such report; yet such an order is not to be extended by mere intendment to matters not actually or necessarily embraced in the report and determined by such order."

Turning now to the bond. Upon its face it is apparently the bond provided for in sec. 6564, Rev. Laws 1910, to be given prior to a sale of real estate. That section provides:

"Every guardian authorized to sell real estate must, before the sale, give bond to the county judge, with sufficient surety, to be approved by him, with condition to sell the same in the manner and to account for the proceeds of the sale as provided for in this article."

The bond, heretofore quoted, sets out the contemplated sale, and then provides that if the guardian shall faithfully execute the duties of "such trust," the bond should be void. What trust? Obviously the only one referred to in the bond, to wit, the sale of real estate. Under no fair construction can this bond be said to be a general one covering any devastavit of the estate.

If the defendants could prove, as they should have been allowed to do, if indeed the fact is not admitted in the pleadings, that no funds ever came into the guardian's hands from the sale of real estate, then the bondsmen on the special bond ought to be here excused, as they are not liable for loss of general funds of the estate arising from sources independent of the sale for which the bond was given. This is clear from the statute and the terms of the bond. It has been so held in similar cases, in Swisher v. McWhinney, 64 Ohio St. 343, 60 N. E. 565; Barker v. Boyd (Ky.) 71 S. W. 528, and Fay v. Taylor, 52 Mass. (11 Metc.) 529. See Woerner on Guardianship, p. 133.

Southern Surety Co. v. Burney, supra, is cited in support of the contention that the sureties upon the special bond are generally liable. That case held that a guardian's general bond covered a loss, also covered by a special bond to sell real estate, but to say that the greater includes the smaller is far from saying that the smaller includes the greater. Such must be the analogy which we are asked to draw from that case.

For the reasons given, the cause should be reversed as to plaintiffs in error for further proceedings.

By the Court: It is so ordered