## SOUTHWESTERN SURETY INS. CO. v. TAYLOR et al.

No. 8822—Opinion Filed April 16, 1918.

Rehearing Denied June 25, 1918.

(173 Pac. 831.)

**1. Evidence—Guardian and Ward—Collateral Attack—Order Transferring Cause —Presumption—Performance of Duty.**

An order of the county court transferring a guardianship cause to the county court of another county in this state cannot be collaterally attacked, and it is to be presumed that the court before making the order of transfer performed his duty and found the facts to justify the order to be true.

**2. Guardian and Ward — Bond—Breach of Conditions—Action.**

The bond sued upon, when taken in connection with section 6532, Rev. Laws 1910, contains conditions for the breach of which this action may be maintained.

(Syllabus by Hooker, C.)

Error from District Court, McClain County: F. B. Swank, Judge.

Action by William A. Taylor, by his guardian, J. F. Keeshan, against Carroll A. Taylor, former guardian, and the Southwestern Surety Insurance Company, as surety on his bond. Judgment for plaintiff, and defendant Southwestern Surety Insurance Company brings error. Affirmed.

Kent V. Gay and Embry, Crockett & Johnson, for plaintiff in error.

Wood & Turk, for defendants in error.

Opinion by HOOKER, C. J. F. Keeshan, as guardian of William A. Taylor, instituted this action in the lower court to recover from Carroll A. Taylor, the former guardian, and the plaintiff in error as his surety, a sum of money due upon the final settlement made by the county judge of McClain county, Okla., on the accounts of the said Carroll A. Taylor as guardian aforesaid. Recovery was had in the lower court, and the plaintiff in error, as the surety upon said guardian's bond, has appealed therefrom to this court, and assigns two reasons why a reversal of said judgment should be had.

1. That the guardianship proceeding was originally filed in the United States court at Ardmore, in Indian Territory, and was there pending at the advent of statehood, at which time, by operation of law, said cause was transferred to Carter county, Okla., said county being then the county of the residence of said guardian and ward. Thereafter the guardian and his ward moved to McClain county, Okla., and the cause was transferred from Carter county to McClain county. And it is asserted by the plaintiff in error that the order transferring was void, and that the county court of McClain county thereby acquired no jurisdiction of said cause; hence it had no authority to approve this bond or to make any settlement with the said guardian of his final accounts, and that the final settlement thus made by the judge of the county court of McClain county of the accounts of said guardian is not binding, valid, or of any force or effect.

Section 6198, Rev. Laws 1910, is as follows:

"In any case where it is shown to the court that the domicile of a minor or ward has been changed from the county where the guardianship is pending to another county in this state, the guardianship may, upon application verified by oath, after notice has been given to the next of kin of such minor or ward and upon good cause shown, be removed to such other county, which would be the proper venue, in the manner and upon the conditions prescribed in the second preceding section for the transfer of suits, matters of proceedings, if the court finds that the domicile of the minor or ward has been changed in good faith and that such transfer would be for the best interest of such minor or ward."

On the 9th day of May, 1911, Carroll A. Taylor, the then guardian of William A. Taylor, filed in the county court of Carter county an application or petition for the transfer of said guardianship proceeding from the county court of said county to the county court of McClain county, his petition reciting the fact that he, the said Carroll A. Taylor, had been appointed guardian of William A. Taylor in the United States court for the Eastern District of Indian Territory at Ardmore, prior to the advent of statehood, at which time he lived within the jurisdiction of said court, and that he had resided in Carter county from the advent of statehood to the 12th day of December, 1910, when he moved with his family to McClain county, where he then resided; that his residence in McClain county was almost 100 miles from Ardmore, and that rendered it very expensive for him to attend court at Ardmore for the purpose of conferring with the judge of the court with reference to the administration of his trust as guardian, and he therefore asked the court to transfer said cause to the county court of McClain county. The petition was duly verified, and on the same day the then judge of the county court of Carter county entered an order in said guardianship proceeding transferring said cause to the county court of McClain county, state of Oklahoma.

It is asserted here that this order of transfer is void for the reason that the same shows upon its face that no notice was served on the next of kin to the said William A. Taylor, as provided by section 6198, Rev. Laws 1910. By the term "next of kin," as used in the statute above quoted, is meant all who would be entitled to share in the distribution in the personal property of the deceased. Shawnee G. & E. Co. v. Motesenbocker, 41 Okla. 454, 138 Pac. 790.

Assuming that this statute is jurisdictional, and must be strictly complied with before the county court of McClain county acquired jurisdiction of this cause, can we say from the record here that the court failed to perform the duty required of it by statute, and thereby hold that the county court of McClain county was without jurisdiction in the premises?

Chapter 208, Sess. Laws 1913, p. 460, is as follows:

"All transfers of records, suits or proceedings of a probate nature which have been attempted to be made whereby a transfer of such records, or proceedings has been ordered from the county where the guardianship or proceeding was instituted or is pending, to the county of the domicile of the minor, or ward, where such domicile has been changed from the county where the guardianship or proceeding was instituted or is pending, to the county to which the transfer is ordered made, even though the original appointment in the court where such matter was instituted or is pending, has been made since statehood, and where such transfer has been ordered prior to the passage and approval of the act of the Oklahoma Legislature approved February 26, 1910, and found in the Session Laws of Oklahoma, 1910, pages 37 and 38, be, and the same are hereby legalized, and no sale or other proceedings by the court to which such suit, matter or proceeding has been ordered transferred, shall be void because of such transfer."

This provision of the statute was intended to cover all contingencies and to cure all irregularities in the transfer of a cause from one jurisdiction to another prior to the approval of the act of May 17, 1913. It is claimed by the plaintiff in error that the purpose of the act was only to cure imperfect transfers ordered and had prior to the passage of the act of February 26, 1910 (Laws 1910, c. 25) ; but with this contention we cannot agree, as in our judgment the Legislature of this state intended to enact a curative statute and make the same apply to the transfer of all causes of this nature prior to the enactment of the statute.

This court in Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433 (speaking of county courts), said:

"They are not inferior courts in the technical sense of the term, because an appeal lies from their decisions. The county courts of this state are courts of record and have original general jurisdiction over all probate matters, and as to such matters, are courts of general jurisdiction, although an appeal from their decisions lies to the district courts."

And the Probate Code (section 6190, Rev. Laws 1910) provides:

"The proceedings of this court are construed in the same manner, and with like intendments, as the proceedings of courts of general jurisdiction, and to its records, orders, judgments and decrees there are accorded like force, effect and legal presumption as to the records, orders, judgments and decrees of district courts."

And section 6489 of Probate Code (Rev. Laws 1910) provides as follows:

"Orders and decrees made by the county court or the judge thereof need not recite the existence of facts, or the performance of its acts upon which the jurisdiction of the court or judge may depend, but it shall only be necessary that they contain the matters ordered or adjudged except as otherwise provided in this chapter. * * *"

In the instant case the record fails to show that any notice was served upon the next of kin. The father was the guardian, and filed a verified petition asking for a transfer of this cause from one court to the other. The court heard the application, and immediately granted the transfer. It must be presumed that the court performed every duty required of him, and that the judgment or order authorizing the transfer is valid. The record does not disclose that there were any of the next of kin upon whom any notice might have been served. If there were none, then no notice could have been given to the next of kin. We must assume that the court found that to be true, and made the order of transfer in conformity with that state of facts.

This court in the case of Hathaway et al. v. Hoffman et al., 53 Okla. 72, 153 Pac. 184, said:

"The record of the county court being silent as to the residence of these minors at the time this appointment was made, it is but fair to presume, in aid of the jurisdiction of the court to make the appointment, that the court before making it, took evidence, as was its duty to do, and found the facts to be that their residence at that time was in Atoka county. For it is said in the headnote to Grignon's Lessee v. Astor et al., 2 How. 319, 11 L. Ed. 283: 'It is for that court to decide upon the existence of the facts which gave jurisdiction, and the exercise of the jurisdiction warrants the presumption that the facts which were necessary to be proved were proved. The distinction examined between courts of limited jurisdiction * * * was rightfully exercised, and courts of general jurisdiction, where, the record being silent upon the subject, it will be presumed that jurisdiction existed. * * *'

"This is in keeping with what this court has always held. In Greer et al. v. McNeal et al., 11 Okla. 519, 69 Pac. 891, in the syllabus the court said: 'It is not necessary that in proceedings properly before the probate court and within its jurisdiction, its judgment shall contain a recitation of the facts upon which the jurisdiction of the court depends. A final judgment of the probate court imports jurisdiction, and it will be inferred from the fact that such a judgment was rendered that all the facts necessary to its proper rendition had been found to exist before the judgment was rendered. Holmes et al. v. Holmes. 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920.

"In aid of the presumption of the jurisdiction of the county court to make the appointment, we will presume the court not only heard, but passed upon, evidence of the same facts disclosed in this collateral attack, in effect that, after the death of the father of these minors in Atoka county, their mother married again there, and the family as thus constituted took up 'their residence in Coal county; that they were living there at the time the appointment was made; and that thereupon the court held the law to be that the residence of these minors at that time was in Atoka county. And assuming, as is contended, that such was an erroneous decision of the jurisdictional fact of residence, it does not follow that the subsequent action of the court in exercising jurisdiction in making the appointment was an usurpation * * * where none existed, but, at most, was error to be corrected on appeal from the order of appointment, and cannot be declared void on collateral attack. * * *

"Before closing, it might be well to say that, although the record is silent on whether the judge of the county court, before making the appointment, gave notice to the relatives of the minors residing in the county, as required by Rev. Laws 1910, § 652, in aid of the jurisdiction of the court to make the appointment, we will presume either that he did so (Holmes v. Holmes, supra), or that he took evidence, as was his duty to do, before making the appointment, and found as a fact that they had no relatives there residing, and hence there were no such relatives to whom he could give notice, and hence we say there is no merit in the contention that the appointment is void because the record fails to disclose such notice given (Rice v. Theimer, supra)."

This court had before it practically the same question in Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090. Before the appointment of a guardian can be made, section 6522, Rev. Laws 1910, provides:

"Before making the appointment the judge must cause such notice as he deems reasonable to be given to the relatives of the minor residing in the county and to any person having care of such minor."

Section 6198, Rev Laws 1910, provides that a probate cause may be transferred—

"* * * after notice has been given to the next of kin of such minor or ward and upon good cause shown."

This court, in construing the former section in the case of Baker v. Cureton, said:

"Pursuant to which letters of guardianship thereafter duly issued to said Hawkins, which, plaintiff says, because it thus appears upon the face of the record that they were issued without notice, said appointment was void for want of jurisdiction in the court to make it. In support of his contention that such notice was necessary to vest the court

with jurisdiction to make the appointment, he relies on Rev. Laws 1910, § 6522. It reads: 'The county court of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either or both of them, of minors who have no guardian legally appointed by will or deed, and who are inhabitants or residents of the county, or who reside without the state and have estates within the county. Such appointment may be made on the petition of a relative or other person in behalf of such minor. Before making the appointment the judge must cause such notice as he deems reasonable to be given to the relatives of the minor residing in the county and to any person having care of such minor.'

"It seems, as this appointment was made on the petition of Hawkins, that the point is well taken, and that the notice contended for was required by the statute. But let that be as it may, assuming that it was necessary to its validity that the judge gave notice of the appointment of Hawkins 'to any person having the care of Ballard,' and 'to such relatives of the minor residing in the county as the judge may deem proper,' while it might be said from the face of the record that no such notice was given, can we not indulge the presumption from the fact of the appointment that the court heard evidence and found every fact necessary to justify the appointment?· In other words, the county court of Wagoner county being a court of general jurisdiction as to probate matters (Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433), and its records entitled to have accorded them the effect and legal presumption in favor of the validity of the appointment, if not appearing on the face of the record that Ballard had relatives residing in the county or was in the care of any one, can we not presume that, his father and mother being dead, he was in the care of no one and had no relatives living in the county, and that hence there was no one to whom the judge could give the notice prescribed by said section? We can and will; and hold that the record and proceedings of the county court cannot be collaterally attacked, as is here attempted, by evidence aliunde, in effect, that he was at the time in the care of some one, and had relatives residing in the county upon whom the notice should have been served."

The order of the county court of Carter county transferring the guardianship proceedings to McClain county, Okla., was an appealable order. Burnett v. Jackson, 27 Okla., 275, 111 Pac. 794. This order was not appealed from, nor has it been questioned that the same was not made in good faith, nor has any attempt been made to avoid or correct it in some manner provided by law.

In the Eaves Case, supra, this court said:

"Conceding, however, that the proceedings for the confirmation of the sale were irregular as claimed, and that notice of sale was not published for the time ordered by the court, yet this irregularity or error in the exercise of unquestionable jurisdiction would not invalidate the sale nor the administrator's deed to the extent of making it voidable by collateral attacks made upon them in the court below."

We must therefore hold that the order of the court involved here is not subject to collateral attack.

This court in Anderson v. Anderson, 45 Okla. 657, 146 Pac. 711, in discussing the doctrine of estoppel as applicable to guardians and their sureties, said:

"This for the reason that a guardian who has received property in trust for his ward and executes a bond for its forthcoming when ordered, when sued on the bond, will not be heard to say that the court had no jurisdiction over the property, and to repudiate the trust and set up title thereto in himself. A fortiori, neither will the surety, to escape liability on the bond, be heard to set up title in the guardian. 15 Am. & Eng. Enc. of Law, p. 76, says: 'One who has been appointed guardian, and who has acted and received funds as such, is estopped to avoid liability therefor by denying the gardianship relation; and, if he has done acts as guardian, he is estopped to deny the validity of such acts or to assert claims in conflict therewith.'

"In support of the text is cited In re Wm. Steele et al., Guardians et al., 65 Ill. 322. That was a proceeding to compel guardians to account for money received by them. It was there held that, where the guardian was sought to be charged with the amount of the sale reported, parol proof was admissible of the interest purchased and the amount of the purchase money received by him in the sale, but parol evidence was not admissible for the purpose of showing that the wards had no interest in the lands sold, as the guardian was estopped, by reason of selling the same as theirs, from disputing such fact, and also by the findings of the court, which must be regarded as res adjudicata.

"Fox v. Minor, 32 Cal. 111, 81 Am. Dec. 566, was a suit by Fox and Malone, sureties on the bond of Wilson, who was plaintiff's predecessor in office as guardian, and who had resigned. The object of the suit was to recover $2,000, which the probate court found to be due from Wilson by an examination of his accounts at the time of his resignation The court said: 'Neither Wilson nor his sureties can be heard to say that Wilson was not legally appointed guardian. Having accepted the appointment, and by virtue thereof become possessed of the minor's estate, it would be strange indeed if he could now dispute the jurisdiction of the court,

and under the pretense that the court had acted without authority, retain the estate of his ward. By accepting the appointment and the estate Wilson placed himself within its jurisdiction and became an officer of the court, and responsible to it for the faithful performance of his trust, and he is forever estopped by the record from denying his accountability. People v. Norton, 9 N. Y. 179. The judgment of the probate court is conclusive against Wilson and his sureties alike. We so held in Irwin v. Backus, 25 Cal. 214 (85 Am. Dec. 125), and we adhere to that decision.'

"McClure v. Commonwealth, 80 Pa. 167, was a like suit on a guardian's bond. In effect the contention of the guardian was that the court had no jurisdiction to make the appointment under which he acted, for the reason that jurisdiction to appoint was vested in another court in another county, but the court held that the appointment in question for that reason was not entirely void, and said: 'Hence where, as in this case, the guardian erroneously appointed has acted in good faith, received the money of his ward, and settled his account before the proper court, and thus has recognized his liability for the money, in an action for its recovery, by a subsequent guardian duly appointed in his place after his removal from his guardianship. His bond in such case is clearly sufficient to bind him. His surety on the bond is also estopped because his bond is not so wholly void that it would not be supported at common law.'

"See, also, Himes et al. v. Mullins 25 Ga. 696; Harbin v. Bell, 54 Ala. 389; Irwin, Adm'r, etc., v. Backus, 25 Cal. 214, 85 Am. Dec. 125; 21 Cyc. 178."

2. It is further asserted by the plaintiff in error that the bond executed by Carroll A. Taylor, as guardian of William A. Taylor, upon which the plaintiff in error was surety, is invalid, and does not by its terms cover any amounts which may have been due from said guardian to his ward. The bond here was executed after the case was transferred from Carter county to McClain county. The said bond is as follows:

"State of Oklahoma, County of McClain—ss.

In the County Court.

"In the Matter of the Guardianship of William A .Taylor, Pearlie May Taylor, Myrtle Lee Taylor, and Dona V. Taylor.

"Know all men by these presents: That we, Carroll A. Taylor, as principal. and Southwestern Surety Insurance Company, as sureties, are held firmly bound unto William A. Taylor, Myrtle Lee Taylor, Pearlie May Taylor, and Dona V. Taylor in the penal sum of four thousand ($4,000.00) dollars, lawful money of the United States, for the payment of which well and truly to be made we bind ourselves, our heirs,

executors, administrators, and assigns, jointly and severally, by these presents.

"The condition of the above obligation is such that whereas, the above-named principal had heretofore been appointed guardian of the above-named minors in the United States court at Ardmore prior to statehood, where said guardianship matter was pending at the time of the admission of Oklahoma as a state of the Union, and by operation of law was transferred to the county court of Carter county on the 29th day of May, 1911, the judge of said court on said date made an order transferring said guardianship matter to the county court of McClain county, and the same was filed in the said county court of McClain county on the first day of June, 1911, where the same is now pending; and whereas, by order of the judge of said court made and entered on the 23rd day of June, 1911, the principal herein was ordered to give a new bond in the penal sum of four thousand ($4,000) dollars with sureties to be approved by the judge of said court.'

"Witness the hands of said principal and said sureties this 26th day of June, 1911.

"(Signed) Carroll A. Taylor.

"The Southwestern Surety Insurance Company.

"By W. L. Griffin, Atty. in Fact."

"Subscribed and sworn to before me this 26th day of June, 1911, [Signed] W. H. Woods, County Judge. [Seal.]"

This bond was duly indorsed, approved, and filed in said cause in said court.

It is claimed by the plaintiff in error that the condition required by section 6532, Rev. Laws 1910, that "the guardian will faithfully execute the duties of his trust according to law," is absent from said bond, and that by reason thereof the bond is a nullity. In support of that proposition, 4 R. C. L. p. 54, par. 14; Pratt v. Wright, 13 Grat. (Va.) 175, 67 Am. Dec. 767; Evarts v. Steger, 6 Or. 55; Hickman v. Jackson. 65 Okla. 184, 164 Pac. 979; Smith v. Garnett, 62 Okla. 76, 161 Pac. 1083; Territory v. Woodring, 15 Okla. 203, 82 Pac. 572, 1 L. R. A. (N. S.) 848, 6 Ann. Cas. 950, are cited.

And it is further asserted that, in the absence of this condition in the bond, there can be no breach thereof, and that the condition cannot be read into the instrument, as it has been omitted by the parties.

We cannot agree with the contention of the plaintiff in error. Section 6532, Rev. Laws 1910, among other things provides:

"* * * The following conditions shall form and constitute a part of every such bond, without being expressed therein:

"First. To make an inventory of all the estate, real and personal, of his ward that comes to his possession or knowledge, and to return the same within such time as the judge may order.

"Second. To dispose of and manage the estate according to law and for the best interest of the ward, and faithfully to discharge his trust in relation thereto, and also in relation to the care, custody and education of the ward.

"Third. To render an account on oath of the property, estate and moneys of the ward in his hands, and all proceeds or interests derived therefrom, and of all the management and disposition of the same, within three months after his appointment, and at such other times as the court directs; and at the expiration of his trust to settle his accounts with the county judge, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys and effects remaining in his hands, or due from him on such settlement, to the person who is lawfully entitled thereto.

"Upon filing the bond, duly approved, letters of guardianship must issue to the person appointed. In form the letters of guardianship must be substantially the same as letters of administration; and the oath of the guardian must be indorsed thereon that he will perform the duties of his office, as such guardian, according to law."

The provision of the statute covers every duty of the guardian concerning the property of his ward. It was enacted for the protection of the ward, and not for the purpose of relieving a surety on a bond from liability as fixed by law. Taking the bond as written, signed, approved, and acted upon by the parties, and construing the same in connection with section 6532 of the statute above quoted, there can be, to us, absolutely no question but what this bond is sufficient to obligate the surety for the faithful performance of every duty imposed by virtue of the guardianship proceeding upon the guardian, and to render the guardian and his surety liable for any breach thereof.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.